# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY M. LAHMEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-CV-393-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff asserts that (1) the ALJ failed to properly assess Plaintiff's residual functional capacity ("RFC"); (2) the ALJ erred in finding that Plaintiff could perform her past work; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

## 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Mary M. Lehmeyer, was born on February 14, 1959 and was 46 at the time of the hearing. [R. 318]. She has a high school education and additional training as a medical clerk. [R. 68]. Her past relevant work includes proof operator at a bank, industrial clerk, and teacher's aide. [R. 63, 71-74]. She alleges that she has been disabled since

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

1

March 15, 1992. [R. 51]. She was last insured for disability insurance benefits through March 31, 1997. [R. 12, 14]. Plaintiff has numerous medical problems, including lumbrosacral disc degeneration, a torn muscle in her left calf, ligament and meniscal damage, as well as degenerative arthritis, in her left knee, and mild degenerative changes in both of her hip joints. [R. 61-62, 197, 210, 241]. Additionally, she has been diagnosed with morbid obesity and high blood pressure. [R. 270, 297-298]. As a result of these conditions, she takes medications which cause her to experience drowsiness, dizziness and nausea. [R. 21, 86-87, 319-320].

Plaintiff protectively filed an application for disability insurance benefits and supplemental security income on September 18, 2003. [R. 51-54]. The Commissioner initially denied her application on March 4, 2004, [R. 34] and, on reconsideration, denied it again on December 17, 2004. [R. 41]. She then filed a Request for Hearing Before an ALJ on January 14, 2005, [R. 44] and ALJ John Volz held a hearing on January 23, 2006. [*See* R. 311-348]. On March 28, 2006, ALJ Volz concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from March 15, 1992, through the date of his decision. [R. 17]. Plaintiff then filed a Request for Review of Hearing Decision on May 25, 2006, [R. 8] and the Appeals Council denied her request on May 17, 2007. [R. 5-7]. Plaintiff now seek judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); see *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ determined that (1) Plaintiff met the insured status requirements of the Social Security Act through March 31, 1997; (2) Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision; (3) Plaintiff's impairments, which consist of obesity, degenerative disc disease, and status post left knee

---

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

arthroscopy, are "severe"; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff has the residual functional capacity for sedentary work; and (6) Plaintiff is capable of performing her past relevant work as a bank operator and clinic clerk/receptionist, as the vocational expert identified the jobs as sedentary with a specific vocational preparation ("SVP") of 3 and the jobs do not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.  [R. 12-17]. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from March 15, 1992, through the date of his decision. *Id.*

## 4. REVIEW

Plaintiff contends that the ALJ erred because he failed to make a proper assessment of her residual functional capacity.[4]  Specifically, Plaintiff argues that the ALJ failed to make his initial assessment of her RFC on a function-by-function basis. Additionally, Plaintiff contends that the ALJ failed to assess her RFC based on all the evidence, but rather just accepted the medical expert's ("ME") estimation of her limitations in determining her RFC without providing an explanation of why he accepted the ME's testimony and the weight he assigned to it.  Furthermore, Plaintiff alleges that the ALJ failed to provide an explanation of how he reached his conclusion regarding the functional effects of her obesity and failed to discuss the side effects of her medications when he made his RFC assessment.

---

[4]Because the Court finds cause for remand based on this argument, the Court declines to address the additional arguments set forth by Plaintiff.

In making a determination of an claimant's's physical capabilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)(internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ is required to make specific findings regarding a claimant's RFC, and those findings should be supported with substantial evidence. *Winfrey*, 92 F.3d at 1023; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ's initial assessment of a claimant's RFC must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . .." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).[5] Additionally, the ALJ must make his determination of a claimant's RFC "based on all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence . . .." *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved for the Commissioner*, SSR 96-5p, 1996 WL 374183 at *5 (S.S.A. July 2, 1996).

In his decision, the ALJ concluded that Plaintiff "has the residual functional capacity for sedentary work." [R. 15]. He made no specific conclusions regarding any of Plaintiff's functional limitations or restrictions; nor did he make a function-by-function assessment of her work-related abilities. He then laid out the evidence and medical opinions that he relied on to reach his conclusion, including opinion evidence from the medical expert, Dr.

---

[5] Although Social Security rulings do not carry the force of law, they are generally entitled to deference because "they constitute the Social Security Administration's interpretations of its own regulations and the statute which it administers." *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

Subramaniam Krishnamurthi, given during the hearing. [R. 16]. At the hearing, the ALJ asked Dr. Krishnamurthi what he thought Plaintiff's RFC would currently be. [R. 337]. After reviewing Plaintiff's medical records, Dr. Krishnamurthi estimated that she could lift a maximum of ten pounds, sit for six hours, stand and/or walk for two hours during an eight hour period, and have occasional limitations in her postural activities, such as bending, stooping and crawling. *Id.* He also stated that he took her weight into consideration when making those estimations. *Id.*

The ALJ erred in his evaluation of Plaintiff's RFC at this point for four reasons. First, his initial determination of Plaintiff's RFC was made in terms of exertional levels of work. The ALJ failed to identify any of Plaintiff's functional limitations or restrictions. Furthermore, he did not assess her work-related abilities on a function-by-function basis. Instead, he simply concluded that she was capable of performing sedentary work. A claimant's RFC cannot initially be expressed in terms of exertional levels of work. *SSR 96-8p* at *3. Rather, "the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." *Id.* at *1. The ALJ erred in making his assessment of Plaintiff's RFC, as his initial, and only, statement in the decision regarding her RFC was made in terms of exertional work, contrary to what is required by SSR 96-8p. [R. 15]. He should have identified her functional limitations or restrictions and performed a function-by-function assessment of her physical or mental capacities in making his initial determination of her RFC. In failing to follow the relevant Social Security regulations, the ALJ committed a legal error. Decisions must be free from legal error. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997).

Second, the ALJ failed to provide any explanation for why he accepted Dr. Krishnamurthi's estimation of Plaintiff's RFC or the weight that he assigned to that testimony. Instead, his opinion just states that Dr. Krishnamurthi gave his own estimate of Plaintiff's RFC. [R. 16]. An ALJ can adopt opinions from a medical source statement, but this statement is distinct from and is not to be equated with an RFC assessment. *SSR 96-5p* at *5. However, if the ALJ decides to incorporate those statements into his RFC evaluation, he must provide an explanation of why he accepted or rejected them. *Id.* The ALJ erred when he adopted Dr. Krishnamurthi's estimate of Plaintiff's RFC without providing an adequate explanation for doing so. Instead of coming to his own independent determination of Plaintiff's RFC, he simply equated Dr. Krishnamurthi's testimony in that regard with the RFC assessment he was supposed to make. [R. 15]. The ALJ should have made his own assessment of what Plaintiff's RFC was in his decision and offered an explanation of why he adopted Dr. Krishnamurthi's estimate of Plaintiff's RFC and the weight he assigned to it. Again, the ALJ failed to apply the correct legal standard.

Third, although both the ALJ and Dr. Krishnamurthi concluded that Plaintiff is obese, neither included any discussion as to how they reached their conclusion regarding whether any physical or mental limitations were caused by the obesity. Dr. Krishnamurthi simply testified that he took Plaintiff's weight into account in making his estimations regarding her RFC. [R. 337]. In his decision, despite concluding that Plaintiff's obesity was "severe," the ALJ just stated that Dr. Krishnamurthi claimed to have taken Plaintiff's weight into account when making his estimations of her RFC and made no further mention of Plaintiff's obesity. [R. 16]. When an ALJ concludes that a claimant is obese, he must discuss the effect that obesity has on the claimant's exertional, postural or social functions in determining

8

claimant's RFC and explain how he came to his conclusion. *Baker v. Barnhart*, No. 03-7041, 2003 WL 22905238 at **3 (10th Cir. Dec. 10, 2003)(unpublished)[6];*see also Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*, SSR 02-1p, 2000 WL 628049 at *6-7 (S.S.A. Sept. 12, 2002).

In the instant case, there was no discussion by either the ALJ or Dr. Krishnamurthi of the effects of Plaintiff's obesity on her RFC. The only time that Plaintiff's obesity was mentioned in regards to her RFC was Dr. Kirshanmurti's statement that he took it "into count" [sic] when he made his estimation of Plaintiff's RFC at the hearing. [R. 337]. The ALJ's decision simply restates that fact and provides no further analysis. [R. 16]. Furthermore, there was no explanation in the ALJ's decision or Dr. Kirshnamurthi's testimony of how either of them reached their conclusion regarding whether or not Plaintiff's obesity caused her to experience any additional functional limitations. Therefore, the ALJ erred when his decision omitted any discussion of how he or Dr. Krishnamurthi reached their conclusions regarding whether Plaintiff's obesity caused her any additional functional limitations. Because the ALJ's assessment of Plaintiff's RFC contains no discussion of her obesity or its effects on her RFC, it is not supported by substantial evidence. *See Baker*, 2003 WL 22905238 at **3.

Finally, the ALJ failed to take into account and discuss the side effects of the medications Plaintiff was taking to manage her pain and control her blood pressure in making his assessment of her RFC. Plaintiff's use of medication to control her high blood

---

[6] The Court recognizes that "[u]npublished decisions are not precedential, but may be cited for their persuasive value." 10 Cir. R. 32.1. The Court has not been able to find a case in the published opinions of the Tenth Circuit more on point regarding an ALJ's failure to discuss the effect a claimant's obesity has on her functional limitations.

pressure and manage her pain is well-documented throughout the record. [R. 67, 86, 91, 132, 172, 192-195, 200-206, 319-320]. She has stated that the medications cause her to experience drowsiness, dizziness and nausea. [R. 21, 86-87, 319-320]. The side effects that she claims she experiences are considered common for the types of medications she takes.[7] The ALJ's decision contains no discussion of the side effects of Plaintiff's medication or the effect that it may have on her RFC. A claimant's RFC assessment must be based on all of the relevant evidence, including the side effects of a claimant's medications. *SSR 96-8p* at *5. Additionally, the ALJ provided no explanation of why he rejected or chose not to rely on this evidence in making his assessment of Plaintiff's RFC. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Accordingly, the ALJ erred when he failed to discuss the side effects of Plaintiff's medications or why he rejected or chose not to rely on that evidence when he made his assessment of her RFC. In the absence of any discussion by the ALJ on these points, the Court cannot determine whether his assessment of Plaintiff's RFC is supported by substantial evidence. *See id.* at 1009.

## 5. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits does not apply the proper legal standards and is not supported by substantial

---

[7]According to her medical records and testimony, Plaintiff takes hydrocodone for her pain and metoprolol and clonodin for her high blood pressure. [R. 21, 86-87, 319-320]. The *Physician's Desk Reference* lists drowsiness, dizziness and nausea as some of the common side effects of these medications. *See Physician's Desk Reference* at 651, 834, 3260. (62d ed. 2007).

evidence. Accordingly, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion. On remand, the ALJ should provide an assessment of Plaintiff's residual functional capacity on a function-by-function basis. Additionally, he should explain why he accepted Dr. Krishnamurthi's testimony and what weight he accorded it in assessing Plaintiff's residual functional capacity. Furthermore, he should discuss the side effects of Plaintiff's medications and explain how he determined the effect of her obesity on her functional limitations when making his assessment of her residual functional capacity.

    It is so ordered on this 2nd day of July, 2008.

Sam A. Joyner
United States Magistrate Judge